[970 NYS2d 319]

In the Matter of RUTH M. POLLACK (Admitted as RUTH MARIE POLLACK), a Suspended Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE TENTH JUDICIAL DISTRICT, Petitioner.

Second Department, August 14, 2013

### APPEARANCES OF COUNSEL

*Robert A. Green*, Hauppauge (*Robert H. Cabble* and *Michele Filosa* of counsel), for petitioner.

*Ruth M. Pollack*, Riverhead, respondent pro se.

### OPINION OF THE COURT

Per Curiam.

The Grievance Committee for the Tenth Judicial District served the respondent with a verified petition, dated June 30, 2009, containing two charges of professional misconduct. After a hearing, the Honorable Arthur J. Cooperman, as Special Referee appointed to hear and report in this matter, sustained both charges. The Grievance Committee now moves to confirm the report of the Special Referee. The respondent neither opposed the Grievance Committee's motion, nor submitted any responsive papers, despite being afforded ample opportunity to do so.

Charge one alleges that the respondent has been guilty of misconduct within the meaning of Judiciary Law § 90 (2) and 22 NYCRR 691.2, in that she was convicted of a "serious crime" within the meaning of Judiciary Law § 90 (4) (d) and 22 NYCRR 691.7. By memorandum and verdict dated September 19, 2008, the respondent was found guilty, in the United States District Court for the Eastern District of New York, of criminal contempt. On September 26, 2008, the respondent was sentenced to unsupervised probation for a period of two years. As a special condition of probation, the respondent was suspended from the practice of law in the United States District Court for the Eastern District of New York for a period of 45 days.

Charge two alleges that the respondent has been guilty of engaging in conduct that adversely reflects on her fitness as an attorney, based upon the specifications of charge one.

Based upon the evidence adduced, we find that the Special Referee properly sustained both charges. Accordingly, the Grievance Committee's motion to confirm the Special Referee's report is granted.

In determining an appropriate measure of discipline to impose, we have considered the conduct underlying the respondent's conviction of criminal contempt, which is detailed in a 49-page memorandum and order issued by United States District Court Judge Joseph F. Bianco of the United States District Court for the Eastern District of New York, in *Stuart v Kempthorne* (2007 WL 2071605, 2007 US Dist LEXIS 50945 [ED NY, July 13, 2007, No. 99-CV-8163(JFB)(MDG)]). Specifically, Judge Bianco described the respondent's "bizarre" and "contumacious" actions during the trial of that matter, in which she represented the plaintiff, including the fact that she "repeatedly" and "blatantly" disregarded the court's scheduling orders, evidentiary rulings, and decisions limiting the scope of the action (2007 WL 2071605, *1, 2, 2007 US Dist LEXIS 50945, *2, 7, 8). Judge Bianco found that the respondent demonstrated "an astounding disregard for her obligations as an attorney and an officer of the court" (2007 WL 2071605, *1, 2007 US Dist LEXIS 50945, *2). Ultimately, Judge Bianco determined that "the cumulative effect of . . . Ms. Pollack's severe misconduct— much of which occurred in the presence of the jury—had so severely prejudiced [the] defendant and undermined the fairness and integrity of the proceedings that the severe sanction of dismissal was warranted" (2007 WL 2071605, *2, 2007 US Dist LEXIS 50945, *8). In a subsequent memorandum and verdict issued by United States District Judge Allyne R. Ross of the United States District Court for the Eastern District of New York, the respondent was found guilty of criminal contempt inasmuch as her conduct in the *Stuart* matter was so inappropriate "that it violated standards of proper courtroom decorum," and was "inconsistent with the maintenance of orderly, dignified judicial proceedings" (*In re Pollack,* 2008 WL 4327000, *12, 2008 US Dist LEXIS 73047, *30 [ED NY, Sept. 22, 2008, No. 07-MC-347(ARR)] [internal quotation marks omitted]). Judge Ross added, "by flouting the court's commands, [the] respondent unquestionably obstructed the administration of justice . . . [T]here can be no doubt that [the] respondent acted know-

ingly and willfully, repeatedly informing Judge Bianco that she would not follow his order[s] because she viewed [them] to be unlawful" (2008 WL 4327000, *13, 2008 US Dist LEXIS 73047, *33-34 [internal quotation marks omitted]). Judge Ross concluded: "[the] respondent's misbehavior made it impossible to conduct an orderly trial . . . and eventually forced Judge Bianco to dismiss the action" (2008 WL 4327000, *13, 2008 US Dist LEXIS 73047, *34).

Similarly, the Honorable Arthur J. Cooperman, the second Special Referee appointed by this Court to hear and report in this matter, found that the respondent demonstrated a "fundamental disrespect for the judicial process." He noted that she accused the first Special Referee of "having predetermined the case, railroading her . . . and being [the] Petitioner's advocate." Further, she "accused the second Special Referee [Judge Cooperman] of bias . . . and having an 'agenda,' " while referring to the proceedings as a " 'kangaroo' court." Judge Cooperman further noted that counsel for the Grievance Committee was "not immune to [the] Respondent's degrading comments," and that the respondent "even questioned the court reporter's authority." In a civil action contemporaneously commenced by the respondent, inter alia, for a judgment declaring that her due process and equal protection rights were violated by Judge Cooperman and counsel for the Grievance Committee, among others, she alleged that the proceedings against her were "reminiscent of Iron Curtain Justice and Ghestapo [sic] terror interrogation and tactics."

The respondent has a substantial disciplinary history. In or about October 1998, she received an admonition from the Grievance Committee for failing to provide a client with a refund in a timely manner, exhibiting discourteous conduct toward both the client and his new counsel, and pressuring the client to sign a satisfaction agreeing to a refund amount not of his choosing. By opinion and order of this Court dated April 3, 2000, she was publicly censured for failing to comply with court orders requiring her to turn over clients' files to new counsel (see Matter of Pollack, 268 AD2d 153 [2000]). In or about June 2006, she received a letter of caution from the Grievance Committee to ensure that she take steps to manage her caseload in order to handle each matter effectively, and to act in a manner consistent with the best interests of her clients. In or about October 2010, she received a letter of caution from the Grievance Committee for failing to satisfy an arbitration award, a letter of cau-

tion for failing to participate in fee arbitration, letters of caution for failing to provide clients with itemized billing statements upon request, and a letter of caution for failing to promptly deliver to a client the contents of her file, as requested, and failing to safeguard the contents of the file while it was in her possession.

In an order dated December 31, 2008, the respondent was suspended from the practice of law before the United States District Court for the Eastern District of New York for a period of two years, after she continued to practice in that court despite her 45-day suspension for criminal contempt by, inter alia, "fil[ing] a motion under the name and signature of her co-counsel without that attorney's knowledge as to the substance or content of the motion" (*In re Ruth M. Pollack*, US Dist Ct, ED NY, No. 08-MC-525, Dec. 31, 2008, Cogan, J.). In an order dated January 20, 2009, the United States District Court for the Southern District of New York suspended the respondent for a period of two years based upon the Eastern District's order of suspension. By further order dated March 26, 2010, the United States District Court for the Southern District of New York issued an order disbarring the respondent from practicing before that court, on the ground that she was continuing to practice before that court, notwithstanding its prior order of suspension. By order dated March 28, 2011, the United States Court of Appeals for the Second Circuit recognized the Southern District's disbarment order and reciprocally disbarred the respondent from practicing before the Second Circuit. By memorandum decision and order dated May 31, 2011, the Eastern District reciprocally recognized the Southern District's order of disbarment, and the respondent's name was stricken from the roll of attorneys authorized to practice before the Eastern District (*see In re Pollack*, 2011 WL 2174799, 2011US Dist LEXIS 58244 [ED NY, No. 08-Misc-525(BMC), May 31, 2011, Cogan, J.]).

Based upon the foregoing, we find that the respondent has engaged in a pattern of behavior that goes to the heart of the judicial system. At no time has she made a "good faith" effort to test the viability of procedures and rulings of the courts. Rather, she has arbitrarily declared them "illegal" or otherwise decided simply not to comply, repeatedly demonstrating a willingness to violate any rules or procedures which she finds unsuitable. Her conduct reflects adversely on her fitness as a lawyer and was "so prejudicial to the administration of justice" that it left a federal court judge—in the midst of an employ-

ment discrimination case—with "no choice" but to dismiss the action (*In re Pollack*, 2008 WL 4327000, 2008 US Dist LEXIS 73047 [ED NY, No. 07-MC-347(ARR), Sept. 22, 2008, Ross, J.]). Even after being convicted of criminal contempt, and receiving a 45-day suspension from practice before the United States District Court for the Eastern District of New York, the respondent engaged in further practice before that court, resulting in a two-year suspension from practice. However, after that suspension was reciprocally recognized in the Southern District, the respondent nonetheless continued to practice before that court, resulting in her disbarment there, as well as reciprocal disbarments in the Second Circuit and the Eastern District.

Under the totality of the circumstances, we find that the respondent has demonstrated a flagrant disregard for the authority of the courts. Effective immediately, the respondent is disbarred and her name is stricken from the roll of attorneys and counselors-at-law.

ENG, P.J., MASTRO, RIVERA, SKELOS and DILLON, JJ., concur.

Ordered that the petitioner's motion to confirm the Special Referee's report is granted; and it is further,

Ordered that pursuant to Judiciary Law § 90, the respondent, Ruth M. Pollack, admitted as Ruth Marie Pollack, is disbarred, effective immediately, and her name is stricken from the roll of attorneys and counselors-at-law; and it is further,

Ordered that the respondent, Ruth M. Pollack, admitted as Ruth Marie Pollack, shall continue to comply with this Court's rules governing the conduct of disbarred, suspended, and resigned attorneys (*see* 22 NYCRR 691.10); and it is further,

Ordered that pursuant to Judiciary Law § 90, the respondent, Ruth M. Pollack, admitted as Ruth Marie Pollack, is commanded to continue to desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding herself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, Ruth M. Pollack, admitted as Ruth Marie Pollack, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the

issuing agency and the respondent shall certify to the same in her affidavit of compliance pursuant to 22 NYCRR 691.10 (f).